# EXHIBIT "A"

# FINANCIAL CONSULTANT
# EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS

In consideration of Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") employing me; compensating me; providing to me employment related benefits; training me; sponsoring me for the General Securities Examination; registering me with various exchanges; licensing me in various states; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; supervising the development of my career; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby agree that:

1. All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

2. If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a) to transfer from Merrill Lynch to me or to my new employer, or

(b) to open a new account with me or with my new employer, or

(c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

3. I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually,,or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4. In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:

(a) that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and

(b) that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and

(c) that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed at Merrill Lynch, in any office and in any capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, and etc. During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefiting from Merrill Lynch's goodwill, reputation, name recognition, and other assets and resources, I further agree that the Accounts of such Prior Acquaintances will be subject to the same restraints as all the other Accounts. The only exception will be my family and relatives.

5. For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction. Further, in the event I voluntarily resign my employment, I will take no action (either by court proceedings or otherwise), to inhibit in any way Merrill Lynch's rights under paragraph 4 herein.

*Continued*

6. If after issuance of a TEMPORARY RESTRAINING ORDER or a PRELIMINARY or PERMANENT INJUNCTION, the parties voluntarily agree, or are ordered, to arbitrate a dispute arising out of this Agreement, each party agrees and demands that any such arbitration be conducted in strict compliance with the applicable written Rules of Arbitration, as published, amended, effective, and in force at the time of my termination. The parties further agree that any Order of the Court shall stay in full force and effect until a Panel of Arbitrators can be properly constituted in accordance with the above referenced written Rules of Arbitration and until said Panel renders a full and final decision.

7. NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. MERRILL LYNCH MAY TERMINATE MY EMPLOYMENT FOR ANY REASON OR FOR NO REASON, JUST AS I MAY RESIGN AT ANY TIME.

8. I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

Date: 12/20/97 [signature]

Financial Consultant

Date: 1-8-98 [signature]

For Merrill Lynch, Pierce,
Fenner & Smith Inc.

# FINANCIAL CONSULTANT
# EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS

In consideration of Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") employing me; compensating me; providing to me employment related benefits; training me; sponsoring me for the General Securities Examination; registering me with various exchanges; licensing me in various states; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; supervising the development of my career; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby agree that:

1. All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

2. If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a) to transfer from Merrill Lynch to me or to my new employer, or

(b) to open a new account with me or with my new employer, or

(c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

3. I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4. In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:

(a) that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and

(b) that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and

(c) that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed at Merrill Lynch, in any office and in any capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, and etc. During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefiting from Merrill Lynch's goodwill, reputation, name recognition, and other assets and resources, I further agree that the Accounts of such Prior Acquaintances will be subject to the same restraints as all the other Accounts. The only exception will be my family and relatives.

5. For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction. Further, in the event I voluntarily resign my employment, I will take no action (either by court proceedings or otherwise), to inhibit in any way Merrill Lynch's rights under paragraph 4 herein.

*Continued*

6. If after issuance of a TEMPORARY RESTRAINING ORDER or a PRELIMINARY or PERMANENT INJUNCTION, the parties voluntarily agree, or are ordered, to arbitrate a dispute arising out of this Agreement, each party agrees and demands that any such arbitration be conducted in strict compliance with the applicable written Rules of Arbitration, as published, amended, effective, and in force at the time of my termination. The parties further agree that any Order of the Court shall stay in full force and effect until a Panel of Arbitrators can be properly constituted in accordance with the above referenced written Rules of Arbitration and until said Panel renders a full and final decision.

7. NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. MERRILL LYNCH MAY TERMINATE MY EMPLOYMENT FOR ANY REASON OR FOR NO REASON, JUST AS I MAY RESIGN AT ANY TIME.

8. I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

Date: 07/05/99 — Karin W. Higginbotham

Financial Consultant

Date: 7/6/99 — [signature]

For Merrill Lynch, Pierce, Fenner & Smith Inc.

# Financial Consultant
# Employment Agreement and Restrictive Covenants

In consideration of Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") employing me; compensating me; providing to me employment related benefits; training me; sponsoring me for the General Securities Examination; registering me with various exchanges; licensing me in various states; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; supervising the development of my career; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby agree that:

1. All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

2. If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a) to transfer from Merrill Lynch to me or to my new employer, or

(b) to open a new account with me or with my new employer, or

(c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

3. I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4. In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:

(a) that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and

(b) that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and

(c) that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed at Merrill Lynch, in any office and in any capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, and etc. During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefiting from Merrill Lynch's goodwill, reputation, name recognition, and other assets and resources, I further agree that the Accounts of such Prior Acquaintances will be subject to the same restraints as all the other Accounts. The only exception will be my family and relatives.

5. For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction. Further, in the event I voluntarily resign my employment, I will take no action (either by court proceedings or otherwise), to inhibit in any way Merrill Lynch's rights under paragraph 4 herein.

*Continued*

6. If after issuance of a TEMPORARY RESTRAINING ORDER or a PRELIMINARY or PERMANENT INJUNCTION, the parties voluntarily agree, or are ordered, to arbitrate a dispute arising out of this Agreement, each party agrees and demands that any such arbitration be conducted in strict compliance with the applicable written Rules of Arbitration, as published, amended, effective, and in force at the time of my termination. The parties further agree that any Order of the Court shall stay in full force and effect until a Panel of Arbitrators can be properly constituted in accordance with the above referenced written Rules of Arbitration and until said Panel renders a full and final decision.

7. NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. MERRILL LYNCH MAY TERMINATE MY EMPLOYMENT FOR ANY REASON OR FOR NO REASON, JUST AS I MAY RESIGN AT ANY TIME.

8. I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

Date: 12-4-98 [signature]

Financial Consultant

Date: 12-7-98 [signature]

For Merrill Lynch, Pierce, Fenner & Smith Inc.

# Financial Consultant
# Employment Agreement and Restrictive Covenants

In consideration of Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") employing me, compensating me; providing to me employment related benefits; training me; sponsoring me for the General Securities Examination; registering me with various exchanges, licensing me in various states; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; supervising the development of my career; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby agree that:

1. All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

2. If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a) to transfer from Merrill Lynch to me or to my new employer, or

(b) to open a new account with me or with my new employer, or

(c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

3. I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4 In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:

(a) that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and

(b) that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and

(c) that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed at Merrill Lynch, in any office and in any capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, and etc. During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefiting from Merrill Lynch's goodwill, reputation, name recognition, and other assets and resources, I further agree that the Accounts of such Prior Acquaintances will be subject to the same restraints as all the other Accounts. The only exception will be my family and relatives.

5. For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction. Further, in the event I voluntarily resign my employment, I will take no action (either by court proceedings or otherwise), to inhibit in any way Merrill Lynch's rights under paragraph 4 herein.

*Continued*

6. If after issuance of a TEMPORARY RESTRAINING ORDER or a PRELIMINARY or PERMANENT INJUNCTION, the parties voluntarily agree, or are ordered, to arbitrate a dispute arising out of this Agreement, each party agrees and demands that any such arbitration be conducted in strict compliance with the applicable written Rules of Arbitration, as published, amended, effective, and in force at the time of my termination. The parties further agree that any Order of the Court shall stay in full force and effect until a Panel of Arbitrators can be properly constituted in accordance with the above referenced written Rules of Arbitration and until said Panel renders a full and final decision.

7. NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. MERRILL LYNCH MAY TERMINATE MY EMPLOYMENT FOR ANY REASON OR FOR NO REASON, JUST AS I MAY RESIGN AT ANY TIME.

8. I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

Date: 8/29/00 [signature]
Financial Consultant Jeffrey Neumeyer

Date: 9/4/2000 [signature]
For Merrill Lynch, Pierce, Fenner & Smith Inc.