# EXHIBIT "C"

# Agreement for Receiving GCIAS FAs

This AGREEMENT FOR RECEIVING GCIAS FAs ("Agreement") is between Merrill Lynch, Pierce, Fenner and Smith Incorporated, its parents, subsidiaries or affiliates (collectively, "Merrill Lynch" or the "Company"), and the individuals whose signatures appear at the end of this Agreement as a signatory ("GCIAS FAs").[1]

Each GCIAS FA is employed as a Merrill Lynch Wealth Management Advisor on the Global Corporate and Institutional Advisory Services team ("GCIAS"), currently led by James Wallace ("Wallace") and Deborah Howard ("Howard"). Wallace and Howard have both elected to separate from Merrill Lynch and stop working on a team with the GCIAS FAs on December 31, 2019 (the "Departure Date"). Additionally, in exchange for payments in retirement that are based on their trailing commissions, Wallace and Howard have both agreed to comply with certain post-employment obligations, including non-competition restrictions through late 2021 and non-solicitation restrictions through 2024.

As of the Departure Date, Merrill Lynch will provide the GCIAS FAs with the opportunity to continue servicing and receiving compensation from the account pools previously captured by Wallace and Howard. As consideration for this opportunity, the GCIAS FAs are each agreeing to the obligations described in this Agreement. ***Each GCIAS FA acknowledges that he/she is receiving adequate consideration from Merrill Lynch in exchange for agreeing to these obligations***, which include, but are not limited to, a downward adjustment of their incentive compensation for 5 years and compliance with the post-employment restrictions.

In consideration of the promises, mutual covenants, understanding and agreements contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by all parties, the parties agree as follows:

## I. Obligations Prior to the Departure Date

Through the Departure Date, each GCIAS FA agrees to comply with the following obligations:

1. Until a decision is made by the Company on how and when the news of Wallace/Howard's impending separation will be communicated within the Company and to clients, each GCIAS FA agrees not to disclose Wallace/Howard's anticipated retirement or departure.

2. Each GCIAS FA agrees to comply with any reasonable protocols and requirements that the Company believes are necessary to ensure the smooth transition of clients/business from Wallace/Howard to the GCIAS FAs.

---

[1] GCIAS consists of many financial advisors/team members who are not signatories to this Agreement. The Payment Obligation is owed by the team members who sign this Agreement (the "GCIAS FAs") regardless of any production splits to others. Before Merrill Lynch will collect from any other GCIAS team member, the financial advisor must sign this Agreement (becoming a GCIAS FA and agreeing to the collection of the Payment Obligation from his/her incentive compensation), and all GCIAS FAs, including the new signatory, must agree to and execute an updated Exhibit A (described below).

II. Payment Obligation

REDACTED - CONFIDENTIAL

REDACTED - CONFIDENTIAL

REDACTED - CONFIDENTIAL

2. **Non-Solicitation of Eligible Households**.

Through December 2024, or for one (1) year following the termination of his/her employment for any reason, ***whichever is later***, each GCIAS FA agrees not to directly or indirectly solicit, or initiate contact or communication with, the "Eligible Households." (Eligible Households include the clients/accounts serviced by Wallace/Howard, any clients/accounts householded with the clients serviced by Wallace/Howard, and any clients whose assets/accounts with the Company were opened by a client whose assets were serviced by Wallace/Howard). The parties agree that this Agreement is a "retiring broker agreement" for purposes of the Protocol for Broker Recruiting ("Protocol"). Accordingly, ***if a GCIAS FA's employment terminates before the Payment Period ends,*** GCIAS FA's agreement not to solicit the Eligible Households applies even if the GCIAS FA resigns from Merrill Lynch and joins a firm that is a signatory to the Protocol. In other words, by accepting the re-assignment of the Eligible Households, GCIAS FA agrees that if he joins a Protocol signatory firm ***during the Payment Period,*** he is prohibited from soliciting, or taking any information pertaining to, the Eligible Households.

3. **Confidential Information**.

GCIAS FA acknowledges and agrees that the Company's "Confidential Information" includes, without limitation, all customer information (including identities, addresses, phone numbers, other

contact information, trading practices, strategies or preferences, margin information, purchasing and marketing technique, sales information, correspondence, records, financial information, related clients and account information for the Eligible Households, and all other data, material, facts), whether maintained on a physical piece of paper (in original or copied form) or stored electronically in the cloud, or on a computer, cell phone or other device. Confidential Information also includes information concerning leads, referrals, and clients serviced by the GCIAS FA as the result of any lead or referral provided by the Company. Confidential Information represents a valuable and unique asset of Merrill Lynch and constitutes a trade secret and property belonging exclusively to Merrill Lynch. GCIAS FA agrees not to disclose Customer Information to any third party, including competitors of the Company, at any time, except for the purposes of conducting business on behalf of Merrill Lynch. Upon termination of his employment, GCIAS FA will immediately return all Customer Information to Merrill Lynch and will relinquish access to, possession of, and control over any such information in any form.

4. **Consent to Injunctive Relief.**

In the event that GCIAS FA breaches, or Merrill Lynch reasonably anticipates that GCIAS FA is about to breach, any of the covenants contained in the preceding paragraphs, GCIAS FA agrees and recognizes that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, GCIAS FA AGREES THAT MERRILL LYNCH MAY OBTAIN A TEMPORARY RESTRAINING ORDER, WITH OR WITHOUT NOTICE, and A PRELIMINARY and PERMANENT INJUNCTION ordering:

a) that GCIAS FA immediately return to Merrill Lynch all Confidential Information, including customer information and records, whether original, copied, duplicated, reproduced, computerized, handwritten, recreated, compiled, or stored in any way whatsoever, and that GCIAS FA be enjoined and restrained from using or disclosing all such information and records; and

b) that, through December 2024, or for one (1) year following GCIAS FA's termination of employment, whichever is later, the GCIAS FA is enjoined and restrained from soliciting any of the Eligible Households.

5. **Confidentiality of Agreement.**

Subject to the exceptions set forth in Paragraph 9 below, each of the GCIAS FAs agrees to keep strictly confidential the terms of this Agreement. This provision does not preclude any GCIAS FA from disclosing to his/her spouse, legal advisors, financial advisors, and tax preparers the fact of this Agreement and the amount of money he/she owes pursuant to its terms, to the extent necessary, provided that any person to whom such information is conveyed agrees to keep the information confidential. Subject to the exceptions set forth in Paragraph 9 below, each GCIAS FA agrees to give written notice immediately to the Office of General Counsel of Bank of America, N. A., Mail Code NC1-007-52-13, 100 North Tryon Street, Charlotte, North Carolina 28255 if he/she is requested or required pursuant to court order, judicial process or regulatory authority to reveal any information specified in this Agreement prior to providing this information; provided, however, that the GCIAS FA is not required to provide the Company with such notice as set forth in paragraph 9 or if such notice is prohibited by the court order or other judicial process.

6. The terms of this Agreement shall be in full force and effect at all times during GCIAS FA's employment and shall survive the termination of his employment. In addition, nothing herein is a promise of employment for a fixed term or otherwise modifies the at-will status of GCIAS FA's employment. GCIAS FA shall be employed by Merrill Lynch on an at-will basis and nothing herein shall be construed as a contract of employment for a definite period of time or term.

7. In the event GCIAS FA changes employment within the securities industry or otherwise becomes employed in competition with the Company, he (a) agrees to advise his new employer regarding the existence of this Agreement and the terms contained herein; (b) agrees to provide a copy of this Agreement to his new employer prior to GCIAS FA's acceptance of employment with said employer; and (c) authorizes the Company to provide a copy of this Agreement to GCIAS FA's new employer.

8. This Agreement shall be binding upon GCIAS FA's heirs. Nothing in this Agreement prevents GCIAS FA from providing information in response to valid and enforceable subpoenas or as otherwise required by law or regulation, from providing information necessary for preparation and filing of any income tax return, or from using this Agreement to enforce its terms. Notwithstanding the foregoing, although Merrill Lynch recognizes the need for employees to act in an open and cooperative manner in responding to governmental, regulator or other legal inquiries and information requests, it is nevertheless essential that all responses ***on behalf of the Company*** be based on sound legal and regulatory guidance. Accordingly, GCIAS FA understands and agrees that, subject to the Exceptions paragraph below, he must not initiate contact or engage in substantive contact with a regulator representative or outside attorney, including off-the-record interviews, or respond to any regulatory or legal inquiries ***directed to the Company*** without first notifying his branch manager, who will seek guidance from the appropriate compliance/legal partner(s).

9. <u>Exceptions.</u>

GCIAS FA understands and acknowledges that nothing in this Agreement prohibits or limits GCIAS FA or his counsel from initiating communications directly with, responding to any inquiry from, volunteering information to, or providing testimony before, the Securities and Exchange Commission, the Department of Justice, FINRA, any other self-regulatory organization or any other governmental, law enforcement, or regulatory authority, regarding this agreement and its underlying facts and circumstances, or any reporting of, investigation into, or proceeding regarding suspected violations of law, and that GCIAS FA is not required to advise or seek permission from the Company before engaging in any such activity. GCIAS FA recognizes that, in connection with any such activity, GCIAS FA must inform such authority that the information GCIAS FA is providing is confidential. Despite the foregoing, GCIAS FA is not permitted to reveal to any third-party, including any governmental, law enforcement, or regulatory authority, information GCIAS FA came to learn during the course of employment with the Company that is protected from disclosure by any applicable privilege, including but not limited to the attorney-client privilege, attorney work product doctrine and/or other applicable legal privileges. The Company does not waive any applicable privileges or the right to continue to protect its privileged attorney-client information, attorney work product, and other privileged information. Additionally, GCIAS FA recognizes that his ability to disclose information may be limited or prohibited by applicable law and the Company does not consent to disclosures that would violate applicable law. Such applicable laws include,

without limitation, laws and regulations restricting disclosure of confidential supervisory information[5] or disclosures subject to the Bank Secrecy Act (31 U.S.C. §§ 5311-5330), including information that would reveal the existence or contemplated filing of a suspicious activity report.

10. Except as prohibited by applicable law, this Agreement shall be interpreted and construed in accordance with the laws of the State of New York.

11. The Company's rights under this Agreement shall be freely assignable by the Company and shall inure to the benefit of Merrill Lynch's successors and assigns, affiliated entities, and any current or future party-in-interest.

12. This Agreement constitutes the sole agreement between the parties as to the subject matter hereof and GCIAS FA represents that in executing this Agreement, he has not relied upon any statement or representation not set forth herein. This Agreement may not be changed or modified except in a writing executed by both parties.

13. This Agreement may be executed and delivered in multiple counterparts, each of which when so executed and delivered shall be an original.

14. GCIAS FA HAS READ AND REVIEWED THIS AGREEMENT, INCLUDING THE RESTRICTIVE COVENANTS, IN ITS ENTIRETY AND HAS HAD SUFFICIENT OPPORTUNITY TO RECEIVE LEGAL COUNSEL. GCIAS FA FULLY UNDERSTANDS THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREES TO ABIDE BY THEM.

MERRILL LYNCH, PIERCE, FENNER
& SMITH INCORPORATED

By: [signature]
MICHAEL NIES RMD.

**Agreed to by the following GCIAS FAS[6]:**

[signature] 11/29/18
Brittany Hartnett

[signature] 11/28/18
Elizabeth White

[signature] 11/28/18
David Mack

[signature] 11-28-18
Emily Fletcher

---

[5] Confidential supervisory information includes any information or materials relating to the examination and supervision of the Company by applicable bank regulatory agencies, Company materials responding to or referencing non-public information relating to examinations or supervision by bank regulatory agencies and correspondence to or from applicable banking regulators.

[6] All financial advisors receiving a split of the Master GCIAS Production Number must sign this Agreement. Additional signatories can be added by attaching additional signature pages and delivering the counterparts, without any requirement that Merrill Lynch or the other GCIAS FAs re-execute or otherwise amend the Agreement.

11/28/18
Erik Bjerke

11.28.2018
James Kaufman

11/28/18
Jeffrey Crowell

11/28/18
Jeffrey Neumeyer

Joseph Sacco 11-28-18
Joseph Sacco

Kevin W Higginbotham 11/28/18
Kevin Higginbotham

11/28/18
Michael Sontag

28 November 2018
Steven Roger Prediletto

11/28/18
Chad Pigg

# EXHIBIT A

## FA SHARES

REDACTED - CONFIDENTIAL