**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>ERIK BJERKE, JEFFREY CROWELL, CHAD PIGG FIFE, EMILY FLETCHER, BRITTANY HARTNETT, KEVIN HIGGINBOTHAM, JAMES KAUFMAN, JEFFREY NEUMEYER, STEVEN PREDILETTO, JOSEPH SACCO, MICHAEL SONTAG, ELIZABETH WHITE, OPENARC CORPORATE ADVISORY, LLC, DYNASTY FINANCIAL PARTNERS, LLC and CHARLES SCHWAB & CO., INC.,<br><br>Defendants. | Civil Action No.<br>1:25-cv-05437-VMC |

**ORDER**

Before the Court is Plaintiff Merrill Lynch, Pierce, Fenner & Smith Incorporated's ("Merrill Lynch") Motion to Lift the Stay as to Dynasty, or in the Alternative, Enforce the Court's Order Compelling Arbitration. (Doc. 60). For the reasons given below, the Motion is denied.

## I. Background

This action arises out of a dispute between a company and its former employees. On September 23, 2025, Plaintiff Merrill Lynch filed a Complaint against defendants Erik Bjerke, Jeffrey Crowell, Chad Pigg Fife, Emily Fletcher, Brittney Hartnett, Kevin Higginbotham, James Kaufman, Jeffrey Neumeyer, Steven Prediletto, Joseph Sacco, Michael Sontag, and Elizabeth White (together, the "Individual Defendants"), and OpenArc Corporate Advisory, LLC ("OpenArc"), Dynasty Financial Partners, LLC ("Dynasty"), and Charles Schwab & Co., Inc. ("Schwab") (together, the "Corporate Defendants") alleging ten causes of action resulting from that dispute: (Count I) Violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1); (Count II) Misappropriation of Confidential Information and Trade Secrets/Violation of O.C.G.A. §§ 10-1-761, *et seq.*; (Count III) Tortious Interference with Merrill Lynch's Business Relations with Customers and Prospects; (Count IV) Tortious Interference with Merrill Lynch's Contractual Relations with Employees; (Count V) Breach of Duty of Loyalty; (Count VI) Breach of Contract; (Count VII) Unfair Competition/Raid; (Count VIII) Conspiracy; (Count IX) Breach of the Protocol; (Count X) Declaratory Judgment Pursuant To 28 U.S.C. § 2201. (*See* Doc. ¶¶ 78–194).

The next day, Merrill Lynch filed two emergency motions seeking both a temporary restraining order ("TRO") and expedited discovery. (Doc. 3). In the

TRO, Merrill Lynch argued that an order enjoining various actions[1] by Individual Defendants, OpenArc, Dynasty, and Schwab was necessary to "prevent the

---

[1] Merrill Lynch requested an Order enjoining and restraining Individual Defendants and Corporate Defendants from the following:

(1) Soliciting or initiating contact or communication with, either directly or indirectly, any Merrill Lynch and/or Bank of America account, customer, client, prospect, lead, or referral, whom they serviced or whose name became known to them during their employment with Merrill;

(2) Soliciting or interfering with any of Merrill Lynch's employees, or encouraging or inducing them to leave Merrill's employ;

(3) Retaining any Merrill Lynch trade secrets or other proprietary/confidential Merrill Lynch information, customer information, or employee information (collectively, "Confidential Information"), whether in original, copied, handwritten, electronic, computerized, or other form;

(4) Using, disclosing, or transmitting the Confidential Information for any purpose, including the solicitation of customers or employees; and,

(5) Destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any Confidential Information, or other documents (including data or information maintained in computer media) in Defendants' possession or control that were obtained from or contain information derived from any Merrill Lynch records or that otherwise relate to any of the events alleged in the Verified Complaint in this action.

(6) Return any and all Confidential Information and other documents, whether in original, copied, handwritten, computerized form (including data or information maintained in computer media), or memorialized in any other form, to Merrill's counsel within twenty-four (24) hours of notice to Defendants or to their counsel of the terms of this Court's Order. Defendants, and anyone acting in concert with Defendants, are

culmination of a pre-meditated raid its Global Corporate and Institutional Advisory Services ('GCIAS') business by its former employees and their corporate co-conspirators." (*Id.* at 2). Merrill Lynch also sought expedited discovery to "gather (i) evidence of the Individual Defendants' misappropriation and use of its confidential information and trade secrets, (ii) evidence of the Individual Defendants' plan to divert Merrill's business to the Corporate Defendants, (iii) evidence of the relationship between the Defendants, and (iv) any internal discussions among Defendants about their departure plan from Merrill and move to work with the Corporate Defendants." (Doc. 6 at 3).

The Individual Defendants and OpenArc opposed both motions and subsequently filed a Motion to Stay and Compel Arbitration by a Date Certain (Doc. 27) wherein they argued that valid written agreements to arbitrate existed and the parties were required by Financial Industry Regulatory Authority ("FINRA") Rule 13202 and 12201 to arbitrate all disputes arising out of the termination of employment of an associated person with any member. (Doc. 27 ¶¶ 1–7). On September 30, 2025, the Court held a hearing on the issues and determined that Merrill Lynch had not met its burden to get a preliminary

---

> precluded from reconstituting or in any way restoring any Confidential Information deleted and/or returned to Merrill Lynch pursuant to this Paragraph.

(*See* Doc. 3-2).

injunction. In the Order that followed, the Court also denied Merrill Lynch's Motion to Expedite Discovery. (Doc. 56 at 2). Additionally, the Court further found that FINRA arbitration was the proper forum for the dispute, granted the Individual Defendants and OpenArc's Motion to Compel as unopposed, and stayed the action as to all parties pending the completion of those arbitration proceedings. (*Id.*).

In the instant Motion, filed roughly four months after the September 30, 2025 hearing and the Court's October 1, 2025 Order, Plaintiff Merrill Lynch asks the Court to lift the stay and allow Merrill Lynch to litigate against Dynasty in Court concurrently with the FINRA arbitration. (Doc. 60 at 5). Alternatively, Plaintiff requests that the Court apply its October 1, 2025 Order to Dynasty so that the case can proceed against all parties in FINRA. (*Id.* at 11). The motion is fully briefed and ripe for review.

**II. Discussion**

Merrill Lynch's Motion effectively asks the Court to reconsider its October 1, 2025 Order sending the Individual Defendants and OpenArc to arbitration and staying the litigation as to all parties. Accordingly, the Court construes Plaintiff's Motion as one for reconsideration. Fed. R. Civ. P. 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the

entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Thus, under Fed. R. Civ. 54(b), a district court has "plenary authority 'to reconsider, revise, alter or amend' a non-final order before the entry of final judgment." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379–80 (11th Cir. 2024) (citations omitted); *see also Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995). Despite having this "plenary authority," district courts "in most instances . . . should hesitate before revisiting their earlier interlocutory orders; important interests of finality, stability, and predictability underly that justifiable caution." *Hornady*, 118 F.4th at 1380.

Whether to grant a motion to reconsider an interlocutory order under Rule 54(b) is within a district court's discretion. *See id.* at 1381 (explaining that Eleventh Circuit reviews such decisions for "abuse of discretion"). District courts should "consider[ ] both the weight of the moving party's arguments and the disruption that a change would cause in light of the time that has passed since the decision was initially made." *Id.* But "in most instances district courts should hesitate before revisiting their earlier interlocutory orders." *Id.* at 1380.

Merrill Lynch puts forth two main arguments in support of its motion. First, it argues that the circumstances justifying the stay put in place on October 1, 2025 as to Dynasty no longer exist because the Court "issued the stay as to all parties premised on the Court's understanding that all parties, including Dynasty, agreed

to arbitrate in FINRA." (Doc. 60-1 at 6). Second, Merrill Lynch argues that Dynasty consented to arbitration during the TRO hearing. Neither argument prevails. The Court stands by its October 1, 2025 Order.

As an initial matter, "[t]he district court is in the best position to interpret its own orders." *Cave v. Singletary*, 84 F.3d 1350, 1355 (11th Cir. 1996) (citing *Matter of Chicago, Rock Island and Pacific R.R. Co.*, 865 F.2d 807, 810–11 (7th Cir. 1988)); *see also DRB Realty & Props., LLC v. Nutrien AG Sols., Inc.*, 1:22-cv-00363-VMC, 2023 WL 9851026, at *1 (N.D. Ga. Dec. 15, 2023) (explaining that the district court has "jurisdiction to interpret and enforce its own prior orders." (internal citation omitted)). The Court finds that its October 1, 2025 Order was clear. When the Court granted Defendants' Motion to Compel as unopposed, it defined "Defendants" as "Individual Defendants" and OpenArc Corporate Advisory, LLC. (Doc. 56 at 2). Merrill Lynch may have assumed that all of the parties were going to arbitration, but the Court's October 1, 2025 Order was plainly limited. The Court declines to revisit or expand that Order now. Because Merrill Lynch puts forth the same argument to support its request to lift the stay, that request must also be denied.

Next, Merrill Lynch's argument that Dynasty consented to arbitration through silence is unsupported by fact and law. The parties agree that because Dynasty is not a FINRA member firm it cannot be required to arbitrate without consent. (Doc. 60-1 at 12). Consequently, Merrill Lynch argues that Dynasty's

failure to notify the Court that it did not consent to FINRA's jurisdiction during the September 30, 2025 hearing amounts to consent. (*Id.* at 16). Or, if the Court finds that Dynasty's silence is not enough, Merrill Lynch argues that many statements Dynasty's counsel made throughout the hearing would lead the Court to believe that it consented to arbitrate. (*Id.* at 18). However, the excerpts included in Plaintiff's Motion are devoid of the context necessary to clearly construe them in Plaintiff's favor.

And the Court is not convinced that Dynasty's statements (or silence) at the hearing, without more, are sufficient to establish consent to be bound to FINRA arbitration. *See generally* Restatement (Second) of Contracts § 69 (1981) ("The mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak"); *JPay, Inc. v. Kobel*, 904 F.3d 923, 928 (11th Cir. 2018) ("Arbitration is a matter of contract and consent. Arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration" (internal citations and quotations omitted)). Finally, the fact that Merrill Lynch waited four months to bring this Motion weighs against its assertion of prejudice and in favor of the Court declining to revisit its earlier Order.

## III. Conclusion

For the reasons articulated above, Plaintiff Merrill Lynch's Motion to Lift the Stay as to Dynasty, or in the Alternative, Enforce the Court's Order Compelling Arbitration (Doc. 60) is **DENIED**.

**SO ORDERED** this 22nd day of July, 2026.

Victoria Marie Calvert
United States District Judge